DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
NORMAN M. ASPIS (BAR NO. 313466)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        naspis@allenmatkins.com

Attorneys for Plaintiff
GEOFF WINKLER, RECEIVER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFF WINKLER, RECEIVER,<br><br>Plaintiff,<br><br>vs.<br><br>WLD DAVIS HOLDINGS, LLC, a California limited liability company; THE WILLIAM LLOYD DAVIS LIVING TRUST; THE ELIZABETH LLOYD DAVIS GST EXEMPT TRUSTS, f/b/o ALEXANDER THOMAS DAVIS and f/b/o GARRETT LLOYD DAVIS; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-03209<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER** |

Plaintiff Geoff Winkler (the "Receiver"), the Court-appointed permanent receiver for Essex Capital Corporation ("Essex") and its subsidiaries and affiliates (collectively, with Essex, the "Receivership Entities" or "Entities"), hereby brings the following complaint (the "Complaint") against the above-captioned Defendants and, on behalf of the Receivership Entities, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. Sections 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the pending Securities and Exchange Commission (the "Commission") enforcement action, styled *SEC v. Ralph Iannelli and Essex Capital Corp.*, United States District Court, Central District of California Case No. 2:18-cv-05008-FMO-AFM (the "Enforcement Action" or "EA"). In particular, the above-captioned action involves the recovery of transfers of funds raised from investors in the fraudulent scheme that is the subject of the Enforcement Action, and which gave rise, in part, to the Receiver's appointment by the Court. Pursuant to the terms of his appointment, and in accordance with this Court's November 12, 2020 Order Granting Motion of Receiver, Geoff Winkler, for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts (EA ECF No. 195) (the "Disgorgement Order"), the Receiver is authorized to institute litigation proceedings to recover assets of the Receivership Entities. Such proceedings include those against investors in the Receivership Entities who were paid more than the aggregate amounts they invested in the Entities ("Net Winners").

2. This Court may exercise personal jurisdiction over the above-captioned Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), and 28 U.S.C. §§ 754 and 1692.

3. Venue in the Central District of California is proper under 28 U.S.C. Section 1391 because this action is an ancillary proceeding to the Enforcement Action, and because the Receiver was appointed in this District pursuant to the Court's previously entered Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver (the "Appointment Order") (EA ECF No. 66) in the Enforcement Action, which specifically authorized the Receiver: (a) "to

institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of" the Receivership Entities; and (b) "to institute . . . or become party to such actions or proceedings in state, federal, or foreign courts, which . . . the Receiver deems necessary and advisable to preserve or recover any Assets."  This Court's September 9, 2019 Order Regarding Permanent Injunction (the "Permanent Injunction") (EA ECF No. 113) in the Enforcement Action reaffirmed the Receiver's authority, including his authority to prosecute the claims alleged herein.

## PARTIES

4. The Receiver is the duly-appointed permanent receiver for the Receivership Entities.  Among other things, the Appointment Order directed the Receiver to recover and marshal, for the benefit of investors in, and creditors of, the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities ("Receivership Assets" or "Assets").  The Permanent Injunction reaffirmed the Receiver's duties and obligations, including his authority to recover and marshal the Assets.  Pursuant to the Appointment Order and the Permanent Injunction, the Receiver enjoys exclusive authority and control over the Assets, including over the causes of action alleged herein.

5. On information and belief, Defendant WLD Davis Holdings, LLC ("WLD Davis") is a California limited liability company with its principal place of business in Los Angeles County, California, and is an identified recipient of Receivership Assets, as described further herein.

6. On information and belief, Defendant The William Lloyd Davis Living Trust (the "William Trust") is a trust established in California, and is an identified recipient of Receivership Assets, as described further herein.

7. On information and belief, Defendant The Elizabeth Lloyd Davis GST Exempt Trusts, f/b/o Alexander Thomas Davis and f/b/o Garrett Lloyd Davis (the

"Elizabeth Trust") is a trust established in California, and is an identified recipient of Receivership Assets, as described further herein. Collectively, WLD Davis, the William Trust, and the Elizabeth Trust are referred to herein as the Davis Defendants.

8. The Receiver is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of Doe Defendants 1 through 10, inclusive. On information and belief, each fictitiously named Defendant is the recipient of fraudulently transferred funds from the Receivership Entities, or was in some way responsible for, participated in, or contributed to the matters and things complained of herein, and in some manner, has legal responsibility therefor, and/or was an alter ego of a Defendant named herein, and that, as a result, is jointly and severally liable with each other Defendant for the acts alleged herein. When the identity and exact nature of such fictitious Defendants' responsibility for, participation in, or contribution to the matters and things herein alleged is ascertained, the Receiver will seek leave to amend this Complaint and all proceedings instituted as a result to set forth the nature of the fictitious Defendants' identities.

## FACTUAL ALLEGATIONS

### I. The Establishment of the Receivership Entities and Their Misappropriation of Investor Funds.

9. As alleged by the Commission in its June 3, 2019 Complaint in the Enforcement Action (the "SEC Complaint") (EA ECF No. 1), Ralph Iannelli has been Essex's sole shareholder, president, and chief executive officer since approximately 1996.

10. As alleged by the Commission in the SEC Complaint, Mr. Iannelli attracted investment into Essex through the sale of promissory notes, the returns on which were alleged to be based on the strength of Essex's equipment leasing

business, pursuant to which Essex's lease portfolio would generate sufficient income to fully offset its borrowing costs and obligations to noteholder investors.

11. As alleged by the Commission in the SEC Complaint, between 2014 and early 2017, Essex's main source of funding was money that it received from investor-funded promissory notes and investor-funded LLC's, not income or revenue derived from its equipment leasing business.

12. As alleged by the Commission in the SEC Complaint, Essex was unable to cover the principal and interest obligations that it owed to its investors and creditors using lease revenue alone. As alleged by the Commission in the SEC Complaint, payments on existing obligations were instead made in large part from money obtained from later investors, in a manner consistent with the operations of a Ponzi scheme.

13. On December 21, 2018, and in part on the basis of the allegations contained with the SEC Complaint, this Court entered the Appointment Order, pursuant to which the Receiver became the duly-appointed permanent receiver for the Receivership Entities. The Permanent Injunction, which reaffirmed the Receiver's appointment and authority, was entered on September 9, 2019.

## II. The Receiver's Authority and Investigation Pursuant to His Appointment.

14. Pursuant to the terms of his appointment, the Receiver is vested with exclusive authority and control over the Receivership Assets. Specifically, Article XI of the Appointment Order and Article VII of the Permanent Injunction vest the Receiver with the "full powers of an equity receiver, including, but not limited to, full power over all funds, assets, [and] collateral," including "full power to sue, foreclose, marshal, collect, receive, and take into possession all such Assets." Moreover, the Appointment Order authorizes, empowers, and directs the Receiver to, among other things: (1) conduct such investigation and discovery as necessary to

identify and locate outstanding Receivership Assets; and (2) preserve and prevent the dissipation of Receivership Assets.

15.  In connection with these duties, the Receiver has reviewed more than 500,000 pages of materials, reflecting hundreds of thousands of individual transactions, relating to the business and financial activities of the Receivership Entities.  This effort has enabled the Receiver to identify and quantify a significant portion of those transactions relating to recoverable Receivership Assets.

16.  On the basis of his review, the Receiver has confirmed that the operations of the Receivership Entities were not profitable, and were unsustainable absent ongoing infusions of new funds from investors and lenders.  The Receiver has confirmed that Essex's payments of so-called returns on investments to certain investors were funded in substantial part by money obtained from new investors, consistent with the operations of a Ponzi scheme.  On this basis, and as detailed significantly in the Receiver's prior submissions to the Court, including his Forensic and Investigative Account Report (EA ECF No. 171), the Receiver has concluded and reported that the activities of the Receivership Entities bear the hallmarks of a Ponzi investment scheme.

17.  On the basis of the Receiver's detailed analysis and accounting, the Receiver has confirmed that, as in most Ponzi schemes, certain Receivership Entity investors (the Net Winners) were paid more than the aggregate amounts they invested in the Entities while others (the "Net Losers") lost money on their investments or loans.  The Receiver has determined, in his reasonable business judgment, that in order to recover and return as much as possible to those investors and creditors with claims against the Entities, including Net Losers, and consistent with the law in this Circuit, it is necessary and appropriate to pursue the disgorgement of profits paid to the Net Winners, including the Defendants identified in the above-captioned action.

18. Accordingly, and on the basis, in part, of the Receiver's confirmations regarding the Receivership Entities' business and financial activities, the Receiver filed a Motion for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts (EA ECF No. 190) (the "Disgorgement Motion") on October 13, 2020, pursuant to which the Receiver sought authority to establish disgorgement procedures and undertake disgorgement efforts against the Net Winners, including the Defendants identified in the above-captioned action. The Court entered the Disgorgement Order on November 12, 2020, granting the Disgorgement Motion and authorizing the Receiver to commence the instant action.

### III. The Fraudulent Transfers to Defendants From the Receivership Entities.

19. Upon the Receiver's appointment, the Receiver promptly moved to secure control over the Entities' offices, Assets, and operations, including their electronic and physical records and data. Altogether, these records comprised more than 500,000 pages of materials, which took the Receiver and his staff considerable time to review and investigate. Despite the significant volume of records obtained, there was no readily apparent mechanism for the Receiver to quickly and definitively identify Net Winners without reconstructing financial receipts and disbursements for the Receivership Entities. Accordingly, at the outset of his appointment and for a relatively significant time thereafter, the Receiver was unable to identify specific payments received from individual investors or payments made to individual investors as purported profits, including payments received from or made to Defendants by the Receivership Entities.

20. The Receiver and his staff devoted considerable time and effort to investigating the Receivership Entities' Assets and financial affairs, including in connection with the Receiver's efforts to identify and marshal Assets from third parties in wrongful possession of such Assets, including the Defendants. Given the volume of records and complexity of the Entities' business and financial affairs, the Receiver did not discover until well after his appointment that the Davis Defendants

had received amounts in excess of their investments in, or contributions to, the Receivership Entities.  In or around June 2020, once the Receiver identified the Davis Defendants as Net Winners and confirmed the specific amount by which payments to them from the Entities exceeded their investments in, or contributions to, the Entities (the "Profit Amount"), the Receiver promptly pursued recovery of the Davis Defendants' Profit Amount.

21. The Profit Amount was calculated by subtracting (a) transfers from the Davis Defendants to the Receivership Entities from (b) transfers from the Receivership Entities to the Davis Defendants, resulting in a calculation of net profits paid to the Davis Defendants.  On the basis of this calculation, the Receiver has determined that the Davis Defendants' Profit Amount is $663,371.03.

22. On information and belief, the Davis Defendants provided no services or other value to the Receivership Entities other than amounts paid to the Receivership Entities as investments and/or contributions, as set forth above.

## COUNT I – AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT TRANSFERS

**(as against the Davis Defendants under Cal. Civ. Code §§ 3439.04 and 3439.07)**

23. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 22, inclusive, set forth above.

24. On the basis of his investigation and analysis of its business operations and financial affairs, the Receiver has concluded that the Receivership Entities operated a Ponzi investment scheme, and were insolvent, or became insolvent, shortly after the subject payments comprising the Profit Amount were made to the Davis Defendants.

25. On information and belief, the Entities, while still under the control of Mr. Iannelli, fraudulently transferred the Profit Amount to the Davis Defendants with the intent to hinder, delay, and/or defraud the Entities' investors and creditors.

26. On information and belief, the Entities' payments of the Profit Amount to the Davis Defendants were made from the proceeds of the Ponzi investment scheme operated through the Receivership Entities, and were generated from the investors in, and creditors of, that scheme.

27. On information and belief, the Entities' conduct was a substantial factor in causing harm to the estate of the Receivership Entities.

28. On information and belief, the investors in, and creditors of, the Receivership Entities, as well as the estate of the Receivership Entities, which the Receiver is charged with administering, have been harmed as a result of these actually fraudulent transfers from the Entities to the Davis Defendants in at least the Profit Amount, which amount is subject to immediate avoidance and disgorgement to the Receiver, in his capacity as receiver for the Receivership Entities.

## COUNT II – AVOIDANCE AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT TRANSFERS

**(as against the Davis Defendants under Cal. Civ. Code §§ 3439.04 and 3439.07)**

29. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 28, inclusive, set forth above.

30. On information and belief, the Entities, while still under the control of Mr. Iannelli, fraudulently transferred the Profit Amount to the Davis Defendants with the intent to hinder, delay, and/or defraud the Entities' investors and creditors.

31. On information and belief, the Receivership Entities received nothing of value in exchange for the payments that comprise the Profit Amount.

32. At all relevant times, the Receivership Entities intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

33. On information and belief, at the time the payments comprising the Profit Amount were made to the Davis Defendants, the Receivership Entities were

engaged in or about to engage in business transactions for which their remaining Assets were unreasonably small in relation to the business or transaction.

34. On information and belief, the Entities' conduct was a substantial factor in causing harm to the estate of the Receivership Entities.

35. On information and belief, the investors in, and creditors of, the Receivership Entities, as well as the estate of the Receivership Entities, which the Receiver is charged with administering, have been harmed as a result of these actually fraudulent transfers from the Entities to the Davis Defendants in at least the Profit Amount, which amount is subject to immediate avoidance and disgorgement to the Receiver, in his capacity as receiver for the Receivership Entities.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for judgment against the Davis Defendants as follows:

### On Counts I and II:

A. For a judgment against the Davis Defendants, avoiding the transfers from the Receivership Entities to the Davis Defendants comprising the Profit Amount;

B. For an order deeming the Profit Amount paid to the Davis Defendants, or such other amount as the Court deems proper, to be held in constructive trust for the benefit of the Receivership Entities;

C. For an order directing the Davis Defendants to be held jointly and severally liable for the Profit Amount, or such other amount as the Court deems proper;

///
///
///
///

D. For an order directing the Davis Defendants to immediately pay the Profit Amount, plus prejudgment interest and costs, or such other amount as the Court deems proper, to the Receiver, and no later than ten (10) calendar days after entry of a judgment on this Complaint; and

E. For such other and further relief as the Court may deem proper.

Dated: April 14, 2021

ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
NORMAN M. ASPIS

By: */s/ Norman M. Aspis*
 NORMAN M. ASPIS
 Attorneys for Plaintiff
 GEOFF WINKLER, RECEIVER